Good morning. My name is David Kessler and I'm an Assistant United States Attorney in the Eastern District of New York. I'm joined by my colleague Kevin Trowell. We represent the government in the appeal. If the panel is amenable, I'd like to reserve two minutes for rebuttal. I know that sometimes is granted in a motion context. Kevin Trowell That's fine. David Kessler Thank you. The District Court's decision should be stayed pending final resolution of this appeal. The core issue here is danger to the community. This isn't a case about a useful indiscretion. It's not a case about in violent crime and encouraged others to do so. And Congress determined there's a presumption that no conditions can keep the community safe from individuals who violate the charged statutory provisions. Nothing has rebutted that presumption or shown that the defendants are less dangerous than they were before they started their conduct. And the District Court didn't address that presumption directly. The court took comfort. Kevin Trowell Remind me of the source of the presumption. David Kessler I'm sorry, Your Honor. I will pull up the statutory citation for you. I just don't have it written down. It's 18 U.S.C. Section 3142. I believe it's E3C as in cat. And it's cited in our moving brief, and then in the detention memo below. So the District Court looked at page 18 of the District Court transcript, a series of factors like the history and characteristics of the defendant, their employment, the fact that they have family responsibilities and individuals they care for. And those are all conditions that existed before the defendant constructed firebomb or threw one or incited others to do so. So those conditions which existed before the crime can't rebut the presumption here. Judge Park Well, and this is Judge Park, that the District Court relied on the bond and the detention conditions and the monitoring conditions to find against dangerousness and flight risks. So, you know, what's the error? And are you asking us just to reweigh those the bail factors? Or are you arguing something different? Judge Park No. I mean, there's clear error here. There is a firm and I think it's a firm and definite conviction here, firm and definite position here that the, I don't want to say weighing, that the conditions do not, simply do not address the danger that's been evidenced by the conduct. You know, neither electronic monitoring nor home detention are a physical wall or a tether that would prevent additional conduct. And although there are now sureties and bond, there was great social suasion already. You know, the defendants have relied heavily on the fact that they care for individuals in their family, that they have sort of special responsibility for caring for particular people in their family. That certainly seems like more of a moral suasion than the sureties on the bond. And that did nothing to stop this. And did nothing to stop the calculation that was required to set these crimes in motion, or carry them out, or incite others to do this. So, that's the error, certainly. And, you know, that's really the basis that we are seeking today as well. You know, the danger exists now, as long as the defendants are in the community. So, that's the basis of the application. And let me just say briefly, I think both defendants, but certainly one of the defendants focused on the idea that this danger is somehow, you know, speculative. And it's not speculative. This is about risk assessment, about the assessment of a potential great risk. And that is not speculation, not on this record. You know, in every case where there's a request to remand a defendant who is out on bail, all of those appeals are going to be based on risk, not certainty. And that's just different than speculation. What is, let me hear you please just address from the government's perspective, why these conditions are inadequate. I mean, you know, we're not dealing with ISIS or Taliban people. I agree. You know, Your Honor, there's no foreign terrorist organization in this case, but what we are dealing with is two defendants who, despite being attorneys, and not just knowing this is wrong, but understanding the seriousness of these consequences, took a series of actions designed to cause damage and, you know, designed or not highly likely to inflict physical injury, if not death. You have one minute left. Counsel, this is Judge Nardini. Can I just ask a question? I think it's clear from the record, but I'd like it just to be clarifying. The conditions of home confinement were with electronic monitoring. Is that correct? That's correct, Your Honor. I believe it's there were exceptions for attorney visits, medical visits, and I believe employment and possibly one or two other exceptions. It's set forth in the record, but those are the main ones. Is there a condition that physically prevents them from leaving the house? Or is it simply the circumstance that the electronic monitoring would at some point  That is correct, Your Honor. There is no physical restriction on the defendant's movement whatsoever. There is only the hope that if they chose to leave the house to do something, that would be detected and acted upon before something happened. And I think that is sort of the core of the issue here. When you look at the conduct and the calculated nature of what happened and the extraordinary risk these actions posed, particularly the incitement of others and the attempt to harm others, that is a danger that is great and is not prevented by, you know, electronic or moral barriers. I see that my time is up. So I will reserve two minutes for rebuttal. Yeah, thank you. We'll hear next from Ms. Schrock. Good morning, Your Honor. May it please the court, this is Sabrina Schrock on behalf of Collinford Mattis. Your Honor, the government is asking this court here today for some extraordinary relief. It is asking for a stay of an order, an order that has already been executed, an order not from one, but from two able and experienced judges, both of whom conducted full factual plenary hearing, adopted the recommendation of the only objective party below the pretrial services unit of the Eastern District of New York, which had conducted its own thorough investigation. And it is this group, pretrial services, Magistrate Judge Gold, District Judge Brody, who considered all the factors, declined the government's rank invitation to focus solely on the nature and characteristics of the offense, did exactly what they should have, considered every factor under the bail reform act, applied the standard, and the standard is to reasonably assure return to court and reasonably assure safety of the community and imposed conditions that do just that. So to be clear, the government argues that the district court didn't acknowledge that this was a case where there's a presumption against bail. And I'm wondering if that's correct, did either the magistrate judge or the district court acknowledge that in its weighing of the bail factors? Absolutely, Your Honor. Magistrate Gold absolutely acknowledged the presumption. I addressed the presumption and told the court why the presumption had, in fact, been overcome. I'm sorry, counsel. Could you just assist us to direct us to where in the record Judge Gold did that? It would be helpful if you had a page say. Page 15. Page 15 or the transcript. Yes, Your Honor. Magistrate Gold's transcript. So I'm sorry, is that general appendix page 15 or 15 of the transcripts? The general appendix page 27. 27. Right. And after the whole policy, I told Judge Gold, I believe that the bail package completely addresses any concerns at all, and I have fairly rebutted this presumption. The court then goes on to say he appreciates everyone's advocacy. And clearly, right before that, on the same page, if I address at the bottom of page 14 and on the front of page 15, why exactly... Excuse me, you have one minute. I have overcome the presumption. On page 16, again, I told Magistrate Gold, and I quote for the court, I have reviewed everything very carefully earlier this morning, and I agree it is a close question. But I also believe that one night of behavior is not a basis to reject someone's ability to make rational decisions, and that home detention assured by the plaintiff and the well-being of his entire family, I'll skip the rest, should be an adequate deterrent for further danger to the community. Even assuming... Ms. Shroff, that's very helpful, that citation. Can you provide us with any citation in which you believe the district court acknowledged the presumption? Of course, Your Honor. Judge Brody, first of all, I just want to make clear. But if you could just start with the page citation and then go back, it's just helpful for us to where you're directing the record. Okay. So let me just scroll up. Sorry, I'm working from home. So I believe it's page 16. If you could just take a look at page 16, right? I address the risk applied, danger to the community. I point out that both are ameliorated by the fact that there are conditions of confinement under the Bail Reform Act, 3142 subsection F, which address all of these. And look, she doesn't even take it for granted. To Judge Brody's absolute and full credit, she says, she asked me, so the question that the court has is the same that I had for counsel for Ms. Rahman. What is it that assures the court that your client will not decide, despite home detention, to go out and act in the way that he did a few days ago? I'm sorry, Ms. Shroff. Can I just hit the pause button on that for a second? Because I am looking at the pages you addressed me to, and I'm just, if you could direct me perhaps to the line number, because I'm not seeing it, where anyone addresses, particularly the court, addresses the presumption. Well, Your Honor, if you look at line 12, 13, 14, 15, right? I'm sorry. 15 of the transcript? No, Your Honor, page 16 of the transcript. 16 of the transcript. Okay. And where does it address the presumption? That is, she's addressing the presumption. She's not using the words, but she's addressing the presumption. She's doing exactly what the government invited her to do. The government says that the presumption of violence is such that the client will go out and do exactly this again. So she takes the government at its word, she takes their concerns seriously, and she asks me the question. What is it that would assure the court that's balancing the presumption? She doesn't say anything about the presumption. Is your suggestion that because the government had raised the presumption, one ought to presume that the court was aware of it, and that's what she was talking about? Well, I'm not asking you to presume, because right before that, on page 16, lines 1 to 6, I talk about both risk of flight and any danger to the community being ameliorated by the bail condition. Right. But let's just be clear, there are many cases where a court has to make the dangerous finding where the presumption does not come into play, correct? Well, of course. Right. So I think my question, just to be clear, is not, did the judge, in your view, address an assessment of dangerousness? My question is, did the judge address the existence of the presumption, which makes this case different from other cases in which the presumption does not apply? So could you just address that specific question? Or is it that because it was adequately raised by the government, your view is that one ought to assume that the court was aware of it? Well, I have to say that the court was fully aware of it because Judge Brody incorporates what happened before Magistrate Judge Gold. And if you look at page 18, right, at page 18, again, she's focused on the dangerousness. What she's doing is what a district court judge is supposed to do, right? What she's doing is she's analyzing the facts about danger, which go to the presumption. So she says, based on the court's reading of the detention memo, and for sure, the detention memo harped on nothing but the presumption. Of course, that's the government's detention memo. So she considered the presumption there, the pretrial services report, which also considers presumption and lists out the factors that weigh for and against bail. And then she says she's considered the argument of the party. Is the government seriously arguing that they were so defunct in their bail application to a district court judge that they did not address the presumption? That's ridiculous. No, just to be clear, then you're arguing not that Judge Brody articulated anything about the presumption, but simply that because it had been adequately raised by the government, one ought to presume that when the court then addressed the dangerousness of actors, it must have also considered the presumption in its calculus. That's correct, Your Honor. But I'm not saying must have. I'm saying that you're welcome. Thank you, Ms. Shah. We'll hear next from Mr. Shechtman. Good morning. Paul Shechtman for Ms. Rahman. Let me just very quickly begin by reminding the court, I'm not sure it needs reminding, the legal standards. On a stay, simply showing some possibility of a record where injury is insufficient. The standard of review here is clear error. There's no legal issue as far as I can see it. And of course, on the question of dangerousness, it is the government's burden by clear and convincing evidence to show dangerousness. There is a statutory presumption here. But what is clear and important is that it simply puts a burden on the defendants to come forward with some showing. And after that, the burden remains on the government to show clear and convincing evidence. It's not a bursting bubble presumption, if I know what that means. It still has some light. It's a factor, but it is not a presumption in the sense that one often thinks of presumptions. Those are the legal standards. If you put them together, that is indeed a heavy burden. I want to say one thing about the facts. Ms. Rahman was on the street in that light like hundreds of other New Yorkers to show her outrage over the murder of George Floyd and the systematic racism that it evidenced. The conduct alleged here shows the following. She had no intent to harm anyone. This was an empty police vehicle, badly vandalized, one and a half blocks from the police station. There were only two other people around. Both of them were taking photographs. There was no crowd nearby. I'm sorry, Mr. Shekman, this is Judge Nardini. Could you direct me where that fact is in the record? That there were only two other people nearby? I think the government will confirm it, Judge. Well, yeah. Could you direct me to where it says in the record? I'm not sure it was said below. It's awkward for a lawyer, Judge, because I have a presumption of innocence here, as did the lawyers who had this below. Can I just pause you? Are you saying that you're citing to me a fact that's not in the record? Because I'm assuming then we'd have to talk to the government and see if they'd like to proper any additional facts on their part, right? I'm not offended by that. I think they will confirm that there were two photographers around. And I think they will confirm that the only person who was offered a device was one of those photographers and offered it to throw into the same abandoned van. Those are the facts here. This was lawless. This was stupid. This was two people swept up in the moment. But it is two people with no history of violence, no criminal history at all. There's no real planning here. What it requires to do this is stopping at a convenience store. There's no membership in any organization. I'm sorry, Mr. Sheckman. It's Judge Jardini again. Did you just say that all the materials could be gotten at a convenience store? Does that include gasoline? If you stop at a convenience store that has a gas station, a gas pump in front of it, the answer is yes, Your Honor. This does not require much, if anything, in the way of planning. Excuse me. You have one minute left. Okay. And then the last thing I would say is this. And this is not in the record, but I think it's important. There were 1,300 people released last year in the Eastern District of New York, a third of whom were on electronic monitoring. The court can confirm what I confirmed this morning. 3% of them were remanded. This defendant was rated in the lowest category for electronic monitoring. And perhaps most importantly, since her release, that is Monday night, Tuesday night, Wednesday night, Thursday night, there have been no issues whatsoever. Her record has been perfect. There was one other person arrested that night. They have 11 arrests in 11 states. This defendant, Ms. Robbins' travel consists of an hour each day from Bay Ridge to the Bronx to help poor people who are facing eviction. This is a defendant who made a mistaken judgment, but to remand her to the MCC is also a mistaken judgment. The judges below, both of them were experienced. Judge Gold has been doing this for 20 years. He knows there's a presumption and he knows conditions of release that are reasonable. Judge Brody was a prosecutor for 12 years before she was a judge for eight. These are experienced, respected people of sound judgment and respectfully, they got this one right. Thank you, Mr. Schechtman. Mr. Kessler, you have your reserve two minutes. Thank you, Your Honor. Let me be brief on the idea that the defendants were swept up at the moment. The record shows they had to gather materials. They had to construct multiple fire bombs. They had to find a target. They had to use them and then encourage at least one other person to use it. They were not swept up in the moment, whatever else those facts show. I also just want to briefly touch on, I think it was Judge Nardini's question about the presumption. The presumption is a factor here. It's not the only thing we're relying on, but I do think it worth noting that, in fact, Judge Brody did not explicitly discuss the presumption as the statute requires her to do. The bigger point here is the risk of dangerousness, which is supported by the fact, not just the presumption. Judge Nardini, could you just respond to counsel's comment that there were only two other people around? Is that fact contained in the district court record anywhere? Your Honor, I don't believe the number of people around was contained in the district court record. Excuse me, you have one more minute. If there are no further questions, the government will rest. Well, I have just one question. Is there any dispute that the existence of the presumption was four square before Judge Brody in the argument? Your Honor, the issue of the presumption, both the fact that it applies and then the legal presumption, and then the presumption becomes a factor rather than the determinant, all of that was briefed in the detention memoranda filed by the government, which were before the district court. Thank you, counsel. We'll take it under advisement.